**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **RANDALL SCHRUM and MICHELE SCHRUM,** | § | |
| ***Plaintiffs*,** | § | |
| **v.** | § | **Case No.** |
| **TAYLOR ELLIOTT,** | § | **JURY DEMANDED** |
| **and** | § | |
| **JOHN AND JANE DOE NOS. 1-10,** | § | |
| ***Defendants*.** | § | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Randall Schrum ("Randy") and Plaintiff Michele Schrum ("Michele") (collectively, the "Schrums"), for their Complaint for Injunctive Relief and Damages (the "Complaint") against Defendant Taylor Elliott ("Taylor") and Defendants John and Jane Doe Nos. 1-10 (collectively, "Defendants"), respectfully show the Court as follows:

## I. INTRODUCTION

1. This is an action for violation of numerous federal and state statutes which prohibit unlawful access to networks, electronic devices and private electronically stored data and communications—namely the Computer Fraud and Abuse Act (18 U.S.C. § 1030, *et seq.*); the Stored Communications Act (18 U.S.C. § 2701, *et seq.*); and the Harmful Access by Computer Act (Chapter 143 of the Texas Civil Practice and Remedies Code). As set forth more fully below, Taylor, acting independently on her own and/or in active conspiracy with numerous individuals seeking to attack and defame the Schrums, engaged in a series of cyber attacks against the Schrums' personal private network, as well as the devices and applications which use that network

to send, receive and store the confidential, personal and private information of the Schrums and their children.

2. The Schrums have also brought three additional common law claims—for trespass to chattels, intrusion upon seclusion and civil conspiracy—which are premised upon the same conduct as their claims for violation of federal and state laws. These common law claims are asserted as in the alternative to and/or as additional bases for recovery against Defendants arising from the same underlying conduct.

3. By filing this Complaint, the Schrums primarily seek temporary, preliminary and permanent injunctive relief against Taylor and the other Defendants to (1) protect themselves, their home and their children; (2) prohibit further unauthorized and unlawful access to their personal private home network, their personal devices and their personal applications, which store and transmit the personal, private and confidential information of the Schrums and their children; and (3) require the return of all personal, private and confidential information improperly and unlawfully obtained by Taylor and the other Defendants, as authorized by 18 U.S.C. § 1030(g) and 18 U.S.C. § 2707(b)(2).

4. By filing this Complaint, the Schrums also seek the recovery of compensatory damages, including their personal losses and actual damages resulting from the bad acts of Taylor and the other Defendants, as well as the attorneys' fees that the Schrums have been forced to incur to protect their home from the bad acts of Taylor and the other Defendants, all as authorized by 18 U.S.C. § 1030; 18 U.S.C. § 2707(b) and Tex. Civ. Prac. & Rem. Code § 143.002(2).

## II. PARTIES, JURISDICTION AND VENUE

5. Randy is a resident of the State of Tennessee with his principal place of residence located in Hickman County, Tennessee.

6. Michele is Randy's wife of 29 years and a resident of the State of Tennessee with her principal place of residence located in Hickman County, Tennessee.

7. Taylor is a resident of the State of Texas with her principal place of residence located in Dallas County, Texas. Taylor can be served with process at her principal place of residence located at 3227 McKinney Avenue, 15D, Dallas, Texas 75204.

8. Upon information and belief, the as yet to be identified John and Jane Doe Nos. 1-10, are residents of the States of Oregon, Tennessee, Missouri, Florida and Texas.

9. Subject matter jurisdiction is proper within United States District Court for the Northern District of Texas because Counts I - III of this Complaint arise under 18 U.S.C. § 1030, *et seq*. and 18 U.S.C. § 2701, *et seq*., respectively. Accordingly, this dispute presents a federal question for resolution and invokes this Court's federal question jurisdiction. *See* 28 U.S.C. § 1331.

10. Subject matter jurisdiction is also proper with respect to the remaining claims, *i.e.* Counts IV-VII of this Complaint, because all such claims share a common nucleus of operative facts with Counts I - III. Accordingly, this Court has supplemental jurisdiction over such claims. *See* 28 U.S.C. § 1367.

11. This Court possesses personal jurisdiction over Taylor and the other Defendants, because all of the conduct at issue took place within the State of Texas.

12. Venue is proper in the United States District Court for the Northern District of Texas because Taylor resides within the Northern District of Texas and a substantial part of the

events giving rise to the claims set forth in this Complaint occurred in the Northern District of Texas. *See* 28 U.S.C. § 1391.

## II. FACTS COMMON TO ALL COUNTS

### A. Hilltop Fellowship

13. In March of 2022, the Schrums and their four (4) young children joined Hilltop Fellowship House of Prayer, an unaffiliated Christian religious organization located in Hickman County, Tennessee (hereafter, "Hilltop Fellowship").

14. As an independent and unaffiliated religious organization, Hilltop Fellowship does not associate with or belong to a larger organized denomination of Christianity. It is effectively a grass-roots religious organization with no formal affiliations with other or larger religious organizations. It meets at a single location and is governed by its own set of self-imposed rules.

15. Hilltop Fellowship includes a shared community that goes beyond religious services and/or meetings. Indeed, members of Hilltop Fellowship socialize together with one another, prepare and eat meals together and even share in and support one another in their domestic lives. For instance, members of Hilltop Fellowship financially support one another and participate in homeschooling and educational community programs to support the children within Hilltop Fellowship. Members of Hilltop Fellowship even seek to live on adjoining parcels of land and regularly host other members to live on their own land, all in an effort to support and encourage the communal aspects of Hilltop Fellowship.

16. Consistent with and in furtherance of Hilltop Fellowship's communal mission, the Schrums and their young children became active in all aspects of Hilltop Fellowship almost immediately, including participating in its religious and social activities on a daily and weekly basis.

17. In response to the significant investment of time, talent and resources into Hilltop Fellowship by the Schrums, Randy soon assumed a leadership position within Hilltop Fellowship and received the formal distinction of a Hilltop Fellowship Elder.

18. As an Elder of Hilltop Fellowship, Randy served the Hilltop Fellowship church and community in numerous ways, including providing moral and spiritual leadership; teaching and preaching within the community; praying and caring for members of the community; modeling behavior consistent with the beliefs of Hilltop Fellowship; and even providing guidance and accountability to members of Hilltop Fellowship, to ensure that their own conduct was consistent with the beliefs of Hilltop Fellowship.

19. As part of his role as an Elder of Hilltop Fellowship, Randy also served with five (5) other individuals as part of a committee of Hilltop Fellowship's leaders ("Hilltop Leadership").

20. The establishment of the Hilltop Leadership was to ensure that no single member of Hilltop Fellowship could exercise unilateral authority over Hilltop Fellowship and issues affecting the church and community. Instead, the goal of the Hilltop Leadership was to provide leadership, oversight and accountability, including on spiritual issues, by consensus and as a unified group for the benefit of Hilltop Fellowship.

21. In early 2024, a rift developed between Hilltop Leadership, on the one hand, and the original founders of Hilltop Fellowship, on the other hand. This rift gave rise to a campaign, undertaken by the founders of Hilltop Fellowship, their children, extended family members and supporters (the "Hilltop Conspirators"), to harass, attack and defame Randy and the other members of the Hilltop Leadership.

22. In response to these attacks—as well as public threats of physical violence at a religious service on March 30, 2025—Randy and each and every other member of the Hilltop

Leadership resigned their membership in and any and all positions with Hilltop Fellowship on March 31, 2025.

23. Upon information and belief, the departure of Randy, the Hilltop Leadership and many other members—totaling approximately seventy (70) individuals—deeply angered the Hilltop Conspirators and caused them to engage in further malicious acts against Randy *and* Michele, as well as anyone who supported them, including the former Hilltop Leadership and the members of a new and independent religious organization named Refuge Ridge Fellowship ("Refuge Ridge"), comprised of individuals who left Hilltop Fellowship.

24. Indeed, immediately after Randy resigned from Hilltop Fellowship, early in the morning on April 2, 2025, numerous bad actors—including Hilltop Conspirators themselves or those working in active concert and participation with them—committed acts of trespass, destruction and vandalism on the Schrums' property.

25. Furthermore, at 3:00 AM on April 2, 2025, the Schrums' home was stormed by six (6) sheriff's deputies and a case worker from the Department of Children's Services ("DCS") in response to an anonymous, and patently false, report that the Schrums' children were the victims of sexual abuse and child pornography.

26. The DCS investigation triggered by the false report(s) failed to uncover even a shred of evidence as to any wrongdoing by the Schrums (because no such wrongdoing has ever occurred) and was ultimately terminated.

27. To date, DCS has only confirmed that the false report was made by an individual using an anonymous tip hotline on April 1, 2025—the day after Randy resigned from Hilltop Fellowship. However, on the morning of April 2, 2025, the sheriff's deputies and DCS case worker

went to the home of a Hilltop Conspirator *first* so that she could provide directions to the Schrums' home.

28. In addition to acts of physical trespass and false reports filed with DCS, the Hilltop Conspirators have engaged in a concentrated campaign to attack, harass, and defame the Schrums.

29. Upon information and belief, the malicious acts against the Schrums and their children, including those set forth herein, are intended to (1) discredit Randy and undermine his reputation in his respective religious, social, and business communities; (2) prohibit Randy from obtaining opportunities to provide income for his family; and (3) cause the Schrums and their four (4) young children to feel unsafe, unwelcome and even threatened in their own community and even their own home, which, as discussed above, is situated amongst many current and former members of Hilltop Fellowship.

30. Upon information and belief, John and Janes Doe Nos. 1-10 consist of one or more members of the Hilltop Conspirators, who have recruited, encouraged or conspired with Taylor in connection with the bad acts giving rise to this Complaint.

### B. Taylor and the "Goal To Bring Randy Down"

31. Taylor is the biological niece and adopted daughter of the Schrums. Notably, when Taylor and her brother were children, the Schrums intervened and sought to terminate the parental rights of Taylor's biological mother and father because Taylor *did* suffer significant abuse in their care.

32. Notwithstanding that the Schrums adopted Taylor and her brother in order to prevent them both from becoming wards of the state, Taylor has repeatedly published statements to third parties which have falsely accused the Schrums of physically and sexually abusing Taylor and their other children, despite the fact that the Schrums have been repeatedly exonerated by

formal investigations (triggered by Taylor's misrepresentations) and the testimony of the Schrums' other children (including in sworn affidavits), each of whom emphatically disclaim Taylor's false accusations.

33. Notably, even Taylor's own siblings have recognized that she has a track record of asserting false claims—including sexual assault—in order to leverage some kind of monetary gain for herself, whether against an apartment complex, a school she attended, or even her adoptive parents, the Schrums. Taylor's own biological brother, who was also adopted by the Schrums, even conceded that Taylor's "sole purpose is to try and get any money she can from randy."

34. Taylor's malicious, unrelenting and demonstrably false claims against her adopted parents have led to estrangement not only from the Schrums, but also from her younger siblings.

35. Prior to Randy's resignation from Hilltop Fellowship, numerous Hilltop Conspirators had been aware (for years) of Taylor and her long history of false misrepresentation against the Schrums. Notably, because the substance of Taylor's allegations are wholly without merit—and consistently proven to be false—her defamation of the Schrums never prevented Randy nor his family from being welcomed into and elevated amongst the ranks of Hilltop Fellowship. However, all that changed once Randy resigned from Hilltop Fellowship and the Hilltop Conspirators realized that Taylor, and her long history of spurious attacks against her adoptive parents, could be weaponized as part of the broader campaign to harass, attack and defame the Schrums.

36. As an example: shortly after Randy resigned from Hilltop Fellowship, one or more Hilltop Conspirators hired private investigators in Tennessee *and* Texas to legitimize and "revive" Taylor's disproven claims against her adoptive parents, including one private investigator who interviewed Taylor and used her "testimony" to generate a sham report attacking the Schrums,

which was ultimately disseminated by numerous Hilltop Conspirators to further harass, attack and defame the Schrums in Hickman County, Tennessee.

37. Another example: certain of the Hilltop Conspirators (1) illegally obtained a confidential Incident Report from the Sheriff's Department of Hickman County, Tennessee, which contained notes from an interview provided by Taylor, and (2) attached the Incident Report to a public filing, which was then circulated and misconstrued by the Hilltop Conspirators and Taylor in an effort to both further defame the Schrums and contrive a pretext for their maliciousness.

38. In her own social media posts, Taylor even acknowledged that "[a] number of people have reached out to me" about the Schrums "from [their] community."

39. While discovery will identify which specific Hilltop Conspirators radicalized, conspired with, aided and abetted, or otherwise encouraged Taylor, it is clear that by December 2025, Taylor was attacking the Schrums—in coordination with the Hilltop Conspirators—in two significant respects.

40. First, Taylor was prolifically publishing defamatory statements regarding the Schrums to social media, including her hundreds of followers which included Hilltop Conspirators and other individuals from Hickman County, Tennessee.

41. Second, Taylor was routinely perpetrating cyber attacks against the Schrums, including brute force cyber attacks and other efforts to hack the Schrums' personal network, personal devices and personal applications used to send, receive and store private, personal and confidential data.

42. Upon information and belief, Taylor's attacks were undertaken with the assistance, encouragement or direction from one or more Hilltop Conspirators.

43. The goal of these attacks against the Schrums—which was shared by Taylor and the Hilltop Conspirators—is best captured by Taylor's own words in a social media message to a family member in December 2020: "**My only goal is to bring him down**" and "**I've been trying to bring randy down forever … I'll just have to someone else … find his accounts**."

C. **<u>Taylor's Social Media Attacks against the Schrums</u>**

44. Consistent with and in furtherance of her "goal to bring Randy down," Taylor has published numerous false statements on social media, since December 17, 2025, which have defamed the Schrums and/or placed them in a false light.

45. Taylor's attacks on the Schrums include, but are certainly not limited to, defamatory statements published by Taylor to her social media account on December 17, 2025; December 31, 2025; February 1, 2026; March 9, 2026; April 10, 2026; April 29, 2026; May 14, 2026; June 7, 2026; June 9, 2026; June 12, 2026; July 10, 2026; and August 4, 2026. True and accurate copies of the defamatory social media posts are attached hereto as **Group Exhibit A** and incorporated herein by reference.

46. Notably, Taylor's efforts to harass, attack and defame the Schrums—as set forth herein—have clearly been undertaken in active concert and participation with one or more of the Hilltop Conspirators, who have used Taylor's statements to attack the Schrums' reputation in their respective religious, social and business communities.

47. Indeed, fake social media profiles—which upon information and belief were created by Hilltop Conspirators—have harassed, attacked and defamed the Schrums using language identical to Taylor's social media posts.

D. **<u>Taylor's Cyber Attacks Against Schrum</u>**

48. Consistent with and in furtherance of her "goal to bring Randy down," Taylor has also perpetrated numerous cyber attacks against the Schrums, including brute force cyber attacks and other efforts to hack the private personal network supporting the Schrums' personal residence (the "Schrum Network") as well as the devices that utilize the Schrum Network, including but not limited to laptops, personal computers, servers, security systems, hard drives and cameras (the "Schrum Protected Devices"); the applications that utilize the Schrum Network, including but not limited to applications related to private e-mail communications, photos, cloud-based storage and servers, financial accounts and banking information and passwords (the "Schrum Protected Applications"); and all personal, private and confidential information of the Schrums and their children that is sent, received or stored by the Schrum Protected Devices and/or Schrum Protected Applications.

49. Upon information and belief, and consistent with her defamatory social media posts, Taylor is coordinating her hacking and cyber attacks with one or more Hilltop Conspirators, who have encouraged, assisted or directed her in connection with such bad acts.

50. To be clear, in addition to having the self-proclaimed motive to "bring Randy down," Taylor also possesses the unique technical skillset to hack or engage in brute force cyber attacks against the Schrums, including the Schrum Network, the Schrum Protected Devices and the Schrum Protected Applications.

51. On professional networking websites, Taylor holds herself out as a cybersecurity expert with skills in "network penetration testing" and "vulnerability assessment," and summarizes her own qualifications as follows:

> Cyber Security Graduate with success in investigating security-related breaches, installing data encryption, and implementing incident response and risk assessment strategies to avert unauthorized access. Proven ability to understand and follow incident response procedures in fast-paced environments. Proficient at escalating

alerts from possible malicious activity, resolving priority cases, and creating reports that enable experts to modify security policies.

52. Notably, one of Taylor's certifications includes "CyHacker: A certificate proving ethical hacking and **practical skills in offensive security**, including **learning to think like a hacker** and defend against cyber threats." (emphasis added).

53. Notably, not only is Taylor clearly working in concert with one or more of the Hilltop Conspirators, but the Schrums are not aware of any Hilltop Conspirator who possesses the requisite training or skillset to carry out hacking or brute force cyber attacks.

54. Notably, since April 2, 2025, the Schrums have received alerts regarding (1) unauthorized attempts to fraudulently "recover" their personal e-mail accounts, including their Google e-mail accounts; (2) unauthorized attempts to fraudulently "reset" login credentials for web-based applications linked to the Schrums' personal bank accounts, including Cash App and Venmo; (3) a lockdown of the Schrums' social media accounts in response to a successful hacking attempt, including Facebook; and (4) unauthorized activities being performed remotely on family laptops—when neither the Schrums nor their children are at home—including the running of illicit search terms.

55. As a result of Taylor's hacking and cyber attacks, the Schrums have had to replace numerous personal devices, computers and laptops and spend hours securing and safeguarding their personal, private and confidential information from further attacks by Taylor.

## III. CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1030(A)(2) AGAINST TAYLOR
### (OBTAINING INFORMATION FROM A PROTECTED COMPUTER)

56. The Schrums restate and reallege the preceding paragraphs as though set forth fully herein.

57. The Schrums own, operate and maintain private computer systems, servers and networks—including but not limited to the Schrum Network, the Schrum Protected Devices and the Schrum Protected Applications—which constitute "protected computer[s]" within the meaning of 18 U.S.C. § 1030(e)(2)(B).

58. As set forth herein, Taylor intentionally accessed the Schrum Network, the Schrum Protected Devices and the Schrum Protected Applications without authorization, and thereby obtained information, including but not limited to the personal, private and confidential information of the Schrums and their children that is sent, received or stored by the Schrum Protected Devices and/or the Schrum Protected Applications, in violation of 18 U.S.C. § 1030(a)(2)(C).

59. As a direct and proximate result of Taylor's conduct, the Schrums have suffered "damage" within the meaning of 18 U.S.C. § 1030(e)(8).

60. As a direct and proximate result of Taylor's conduct, the Schrums have suffered "loss" within the meaning of 18 U.S.C. § 1030(e)(11), including but not limited to (1) costs incurred to investigate the unauthorized access; (2) costs incurred to restore the Schrum Network, the Schrum Protected Devices and/or the Schrum Protected Applications; (3) costs associated with conducting damages assessments; (4) costs associated with preventing future unauthorized access to the Schrum Network, the Schrum Protected Devices and/or the Schrum Protected Applications; and (5) costs incurred to replace the Schrum Protected Devices.

61. The losses sustained by the Schrums, as described above, are at least $5,000 in the aggregate during a one-year period, satisfying the threshold in 18 U.S.C. § 1030(c)(4)(A)(i)(I).

62. In addition, the Schrums are entitled to injunctive relief pursuant to 18 U.S.C. § 1030(g), enjoining Taylor from further unauthorized access to the Schrum Network, the Schrum

Protected Devices and the Schrum Protected Applications, and ordering the return or destruction of all misappropriated data therefrom.

**COUNT II**
**VIOLATION OF 18 U.S.C. § 1030(A)(5) AGAINST TAYLOR**
**(CAUSING DAMAGE TO A PROTECTED COMPUTER)**

63. The Schrums restate and reallege the preceding paragraphs as though set forth fully herein.

64. The Schrums own, operate and maintain private computer systems, servers and networks—including but not limited to the Schrum Network, the Schrum Protected Devices and the Schrum Protected Applications—which constitute "protected computer[s]" within the meaning of 18 U.S.C. § 1030(e)(2)(B).

65. As set forth herein, Taylor intentionally accessed the Schrum Network, the Schrum Protected Devices and/or the Schrum Protected Applications without authorization, and, as a result of such conduct, recklessly caused damage and loss in violation of 18 U.S.C. § 1030(a)(5)(B-C).

66. The damages and losses sustained by the Schrums, as described above, are at least $5,000 in the aggregate during a one-year period, satisfying the threshold in 18 U.S.C. § 1030(c)(4)(A)(i)(I).

67. In addition, the Schrums are entitled to injunctive relief pursuant to 18 U.S.C. § 1030(g), enjoining Taylor from further unauthorized access to the Schrum Network, the Schrum Protected Devices and the Schrum Protected Applications, and ordering the return or destruction of all misappropriated data therefrom.

**COUNT III**
**VIOLATION OF 18 U.S.C. § 2701(A) AGAINST TAYLOR**
**(UNLAWFULLY ACCESSING STORED COMMUNICATIONS)**

68. The Schrums restate and reallege the preceding paragraphs as though set forth fully herein.

69. As set forth herein, Taylor intentionally accessed without authorization, facilities through which electronic communication services is provided—namely the Schrum Network, the Schrum Protected Devices and the Schrum Protected Applications—and thereby obtained, altered, or prevented authorized access to the Schrums' electronic communications while in electronic storage, in violation of 18 U.S.C. § 2701(a).

70. Taylor's conduct does not fall within any exception under 18 U.S.C. § 2701(c), because Taylor is not the provider of such electronic communication services, the Schrums did not consent to the access, and the access was not authorized by any other means.

71. Taylor's conduct was knowing and intentional within the meaning of 18 U.S.C. § 2707(a).

72. As a direct and proximate result of the actions undertaken by Taylor, the Schrums suffered losses and actual damages in an amount to be proven at trial.

73. The Schrums are entitled to recover their actual damages pursuant to 18 U.S.C. § 2707(b)(1), in an amount to be proven at trial, or statutory damages to the extent available.

74. The Schrums are further entitled to recover their reasonable attorneys' fees and other litigation costs reasonably incurred by them pursuant to 18 U.S.C. § 2707(b)(3).

75. The Schrums are also entitled to punitive damages pursuant to 18 U.S.C. § 2707(b)(3), given the conduct undertaken by Taylor was both willful and intentional.

76. In addition, the Schrums are entitled to injunctive relief pursuant to 18 U.S.C. § 2707(b)(2), enjoining Taylor from further unauthorized access to the Schrum Network, the Schrum Protected Devices and the Schrum Protected Applications, and ordering the return or destruction of all unlawfully obtained communications therefrom.

**COUNT IV**
**VIOLATION OF TEX. CIV. PRAC. & REM. CODE § 143.001 AGAINST TAYLOR**
**(HARMFULLY ACCESSING BY COMPUTER)**

77. The Schrums restate and reallege the preceding paragraphs as though set forth fully herein.

78. At all relevant times, the Schrums owned, operated, and/or were the authorized users of the computer(s), computer network(s), and/or computer system(s) described herein—*i.e.*, the Schrum Network, the Schrum Protected Devices and the Schrum Protected Applications.

79. As set forth herein, Taylor, acting alone and/or in active concert and participation with one or more of the Hilltop Conspirators, knowingly accessed the Schrum Network, the Schrum Protected Devices and/or the Schrum Protected Applications without the Schrums' effective consent, as that term is defined in Tex. Penal Code § 1.07(a)(19) and applied under Tex. Penal Code § 33.01(12).

80. Upon information and belief, Taylor accessed the Schrum Network, the Schrum Protected Devices and/or the Schrum Protected Applications without consent using hacking or brute force cyber attacks.

81. Taylor's access was without the Schrums' effective consent under Tex. Penal Code § 33.02 because Taylor had no consent, express or implied, to access the Schrum Network, the Schrum Protected Devices and/or the Schrum Protected Applications at all.

82. Upon information and belief, Taylor acted with the intent (1) to harm the Schrums; (2) to damage, alter or delete the Schrums' property; or (3) to obtain or use the Schrums' files, data or confidential information to harm the Schrums, within the meaning of Tex. Penal Code § 33.02(b-1).

83. Tex. Civ. Prac. & Rem. Code § 143.001(a) provides that "[a] person who is injured or whose property has been injured as a result of a violation under Chapter 33, Penal Code, has a civil cause of action if the conduct constituting the violation was committed knowingly or intentionally."

84. As set forth above, Taylor knowingly and/or intentionally violated Tex. Penal Code § 33.02 by accessing the Schrum Network, the Schrum Protected Devices and/or the Schrum Protected Applications without the Schrums' effective consent.

85. As a direct result of Taylor's violation, the Schrums and/or the Schrums' property was injured in an amount to be proven at trial, entitling the Schrums to recover under Tex. Civ. Prac. & Rem. Code § 143.001.

86. The Schrums are further entitled to recover their reasonable attorneys' fees and other litigation costs reasonably incurred by him pursuant to Tex. Civ. Prac. & Rem. Code § 143.002(2).

## **COUNT V**
## **TRESPASS TO CHATTELS**

87. The Schrums restate and reallege the preceding paragraphs as though set forth fully herein.

88. At all times relevant hereto, the Schrums owned, legally possessed and had a right to immediate possession of the Schrum Network, the Schrum Protected Devices and the Schrum Protected Applications.

89. As set forth herein, Taylor intentionally interfered with, or dispossessed the Schrums of, the Schrum Network, the Schrum Protected Devices and the Schrum Protected Applications through a series of hacking or brute force cyber attacks, all without the Schrums' consent.

90. Taylor intended that her acts—including hacking or brute force cyber attacks—would cause the interference suffered by the Schrums.

91. As a direct and proximate result of the actions undertaken by Taylor, the Schrums suffered losses and actual damages in an amount to be proven at trial.

**COUNT VI**
**INTRUSION UPON SECLUSION**

92. The Schrums restate and reallege the preceding paragraphs as though set forth fully herein.

93. At all relevant times hereto, the Schrums owned, operated and maintained the Schrum Network, Schrum Protected Devices and Schrum Protected Applications—all of which were used to send, receive and store the personal, private and confidential information of the Schrums and their children—in which the Schrums held a reasonable expectation of privacy.

94. The Schrums' expectation of privacy in the Schrum Network, the Schrum Protected Devices and the Schrum Protected Applications was objectively reasonable because access was protected by unique passwords known only to the Schrums and their children, and which were never shared with Taylor or any third party.

95. The matters accessed and/or observed by Taylor—including the personal, private and confidential information of the Schrums and their children—concerned the Schrums' private affairs and were not matters of public or legitimate concern to anyone other than the Schrums.

96. As set forth herein, Taylor, without the Schrums' knowledge or consent, intentionally accessed the Schrum Network, the Schrum Protected Devices and the Schrum Protected Applications.

97. Taylor's intrusion was intentional because she acted with the purpose of, or with substantial certainty that her conduct would result in, accessing or observing the Schrums' private affairs.

98. Taylor's conduct was not negligent, inadvertent or undertaken with any actual or apparent consent from the Schrums.

99. Taylor's intrusion into the Schrums' private affairs would be highly offensive to a person of ordinary sensibilities. A reasonable person would find it highly offensive to have their personal, private and confidential information accessed without their knowledge or consent.

100. The offensiveness of Taylor's conduct is further demonstrated by the fact that it was undertaken in active concert and participation with one or more Hilltop Conspirators amidst a broader campaign to harass, attack and defame the Schrums.

101. As a direct and proximate result of Taylor's intrusion, the Schrums have suffered injury and actual damages in an amount to be proven at trial.

102. Taylor's conduct was committed knowingly, intentionally and with malice, entitling the Schrums to recover exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003.

103. Additionally, the Schrums are entitled to injunctive relief prohibiting Taylor from any further intrusion into the Schrums' private affairs, networks, accounts, devices or communications.

**COUNT VII**
**CIVIL CONSPIRACY AGAINST TAYLOR AND JOHN AND JANE DOE NOS. 1-10**

104. The Schrums restate and reallege the preceding paragraphs as though set forth fully herein.

105. Taylor and the other yet to be identified John and Jane Doe Nos. 1-10, who are believed to be comprised of one or more Hilltop Conspirators, have engaged in a persistent and ongoing campaign to threaten, harass, and intimidate the Schrums and their children.

106. Defendants have conspired and agreed with one another to wage this campaign against Randy and his family through a common design of threats, intimidation, defamation, invasion of privacy, destruction to property, trespassing, intrusion upon seclusion, and other similar illegal and/or tortious conduct.

107. Defendants' conspiracy constitutes concerted action to achieve an unlawful purpose to harass, attack and intimidate the Schrums.

108. Defendants' conspiracy is also characterized by unlawful means, including, but not limited to, intimidation, destruction of property, illegal trespass to property, illegal trespass to chattels, intrusion upon seclusion and violation of the laws of the State of Texas and the United States.

109. Among other things, Defendants' conspiracy reflects a premeditated pattern of concealment and obfuscation—whereby false accusations are manufactured and indiscriminately published, whereby official law enforcement records are illegally obtained and affirmatively misrepresented, and whereby *any* notion of justice is subordinated to a sham court of public opinion—which is targeted to destroy the Schrums' reputation, livelihood, and family.

110. Taylor has engaged in numerous overt acts in furtherance of the conspiracy between herself and John and Jane Doe Nos. 1-10, as more fully described above. Taylor's overt acts, as

described in the factual allegations and the individual counts of this Complaint, include, but are not limited to, the conduct supporting the following claims: *violations of 18 U.S.C. § 1030 (**Counts I and II**); violations of 18 U.S.C. § 2701* (***Count III***); *violations of Tex. Penal Code § 33.02, as incorporated by Tex. Civ. Prac. & Rem. Code § 143.001 (**Count IV**); trespass to chattels (**Count V**); and intrusion upon seclusion (**Count VI**).*

111. As a result of the conduct described above, in furtherance of the conspiracy by and between Taylor and John and Jane Doe Nos. 1-10, the Schrums have suffered losses and actual damages in an amount to be proven at trial.

## IV. JURY TRIAL DEMAND

112. The Schrums hereby demand a jury trial with regard to all claims and issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Randall Schrum and Michele Schrum pray for judgment against Defendant Taylor Elliott and Defendants John and Jane Doe Nos. 1-10 as follows:

a. Taylor be cited to appear and answer;

b. the Schrums be awarded their losses, actual damages and/or compensatory damages, in an amount to be proven at trial, including as authorized by 18 U.S.C. § 1030(g); 18 U.S.C. § 1030(e)(11); and 18 U.S.C. § 2707(b)(1);

c. the Schrums be awarded their reasonable attorneys' fees and other litigation costs reasonably incurred by them, including as authorized by 18 U.S.C. § 2707(b)(3) and Tex. Civ. Prac. & Rem. Code § 143.002(2);

d. the Schrums be awarded punitive damages in light of Taylor's willful, intentional and malicious conduct, including as authorized by 18 U.S.C. § 2707(b)(3);

e. the Schrums be awarded pre-judgment and post-judgment interest at the maximum allowable rate;

f. the Schrums be awarded temporary, preliminary and permanent injunctive relief which, among other directives, (1) prohibits any further access to the Schrum Network, the Schrum Protected Devices or the Schrum Protected Applications and (2) requires the return of any information improperly obtained from the Schrum Network, the Schrum Protected Devices or the Schrum Protected Applications, including as authorized by 18 U.S.C. § 1030(g) and 18 U.S.C. § 2707(b)(2); and

g. Any other relief in equity or at law which this Court may deem just and proper under the circumstances.

Respectfully submitted,

By: _/s/ Shelby Menard_______________
Shelby Menard
Texas Bar No. 24106581

SPENCER FANE LLP
2200 Ross Avenue, Suite 1700
Dallas, Texas 75201
Tel: (214) 750-3610
Fax: (214) 750-3612
Email: smenard@spencerfane.com

Arthur D. Gregg
Missouri Bar No. 67098
(Pro Hac Vice Application Forthcoming)
1 North Brentwood Blvd., Suite 1000
St. Louis, Missouri 63105
Tel: (314) 863-7733
Fax: (314) 862-4656
Email: agregg@spencerfane.com

**ATTORNEYS FOR PLAINTIFFS**